h CHE HARDY, J„
dissents.
I respectfully disagree with the majority and would reverse the trial court’s denial of defendant’s exception of improper venue. Our courts have held that a domicile once acquired is presumed to continue; that one alleging a change in domicile has the burden of proving it; and that the presumption in favor of the original domicile prevails if there is any reasonable doubt as to the change. In re: Adoption of Rials, 220 La. 484, 56 So.2d 844 (1951). The party seeking to show his domicile has changed must overcome the legal presumption that it has not been changed, by positive and satisfactory proof of the establishment of a new domicile as a matter of fact with the intention of remaining and abandoning the former domicile. La. C.C. art. 41; Succession of Caprito, 468 So.2d 561 (La.1986).
In this case, the record reflects uncon-troverted testimony that the D’Angelos moved from Jefferson Parish to St. Tammany Parish in 1991 and, thus, established their matrimonial domicile in St. Tammany. Mr. D’Angelo, however, filed his Petition for Divorce in Jefferson Parish alleging that he was a Jefferson Parish domiciliary. Mrs. D’Angelo filed an exception alleging that Jefferson Parish was a parish of improper venue. Because domicile is presumed to continue, Mr. D’Angelo bore the burden of overcoming the legal presumption in favor of the original domicile, which was St. Tammany, in order to defeat Mrs. D’Angelo’s exception of improper venue.
LThe law provides that the party attempting to overcome the legal presumption must do so, by positive and satisfactory proof of the establishment of a new domicile with the intention of remaining and abandoning the former domicile. La. C.C. art. 41; La. C.C. art. 3941; Succession of Caprito, 468 So.2d 561 (La.1985). The intention of making the new residence one’s principal establishment is proved by either express declaration of an intent to change before the recorder of the parishes or by proof showing a change in circumstances. La. C.C. arts. 42, 43.
Here, Mr. D’Angelo did not declare his intent to change his domicile with the: re *612 corder of mortgages so' his burden was “proof showing a change in circumstances” of making a new residence his principal establishment. Id. Although Mr. D’Angelo contends that he introduced documents and testimony sufficient to establish that his domicile had changed to his mother’s house, I do not find that the record reflects such a change.
At the hearing on Sandra’s exception of improper venue, Mr. D’Angelo presented documents, including his driver’s license, voter registration card, and employment affidavit, in support of his claim that he was a Jefferson Parish domiciliary. Even the trial judge doubted the veracity of Mr. D’Angelo’s claims because the trial judge wrote in his Reasons for Judgment, “The Court certainly has some doubt as to Mr. D’Angelo’s domiciliary status at that address for the entire time that he has used the address as his mailing address.”
In establishing domicile, intent is based upon the actual state of facts and not what one declares them to be. Sheets v. Sheets, 612 So.2d 842 (La.App. 1 Cir.1992). The circumstances indicating establishment of a domicile include where a person sleeps, takes his meals, has established his household, and surrounds |ahimself with family and the comforts of domestic life. Id; Hansel v. Holyfield, 00-0062 (La.App. 4 Cir. 12/27/00), 779 So.2d 939, 945.
Here, Errol D’Angelo testified that his brother, Mr. D’Angelo, did not have a regular bedroom at the Beaulieu address and that he slept in a recliner or on the sofa. Errol also testified that Mr. D’Angelo might have slept at the Beaulieu address one or two times á week since 2000. Errol could not say how often Mr. D’Angelo ate at the house and Errol agreed that none of Mr. D’Angelo’s furniture was at the Beau-lieu address. Cleda D’Angelo, Mr. D’Angelo’s mother, could not remember when Mr. D’Angelo stayed at her house.
I cannot agree with the majority’s statement that the full text of Mr. and Mrs. D’Angelo’s daughter, Cherie Bohnen-stiehl’s testimony reflects that Mr. D’Angelo lived at the camp for only a short while to do repairs to the camp in 2003. Bohnenstiehl testified that Mr. D’Angelo was residing at the camp in March 2003. Bohnenstiehl stated that she and her family also visited her grandmother at the Beaulieu address for the St. Patrick’s Day Parade in March 2003 and her father was not at the house. Bohnenstiehl also stated that she did not observe any of his belongings at the house at that time. Bohnen-stiehl further testified that her family had never rented the camp earlier than May of any given year.
Interestingly, Bohnenstiehl also testified that she drives down Beaulieu Street every day to bring her husband to work and Bohnenstiehl has never seen her father’s car at her grandmother’s house. Further, Mr. D’Angelo admitted. that his checks, which are drawn on a checking account opened after his separation from Mrs. D’Angelo, bore the camp’s address. Mr. D’Angelo also admitted that he had clothes at the camp and received mail at that address.
Based on the foregoing, I do not find that Mr. D’Angelo presented evidence that amounted to positive and satisfactory proof of the establishment of a newjjflomicile at his mother’s house in Jefferson Parish with the intention of remaining and abandoning the former domicile in St. Tammany Parish. Accordingly, I would reverse the trial court judgment overruling Sandra’s exception of improper venue, grant the exception, and remand for further proceedings.